**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOSEPH R. LORDAN, SB# 265610
 E-Mail: Joseph.Lordan@lewisbrisbois.com
JESSICA S. PLINER, SB# 261976
 E-Mail: Jessica.Pliner@lewisbrisbois.com
SUMY KIM SB#290082
 E-Mail: Sumy.Kim@lewisbrisbois.com
333 Bush Street, Suite 1100
San Francisco, California 94104-2872
Telephone: 415.362.2580
Facsimile: 415.434.0882

Attorneys for Plaintiff
ACRISURE OF CALIFORNIA, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACRISURE OF CALIFORNIA, LLC, a Michigan limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>TLONDON INSURANCE SERVICES, LLC, a California Limited Liability Company; TRICIA LONDON, an individual; and Does 1 through 20, inclusive,<br><br>Defendants. | CASE NO. 8:19-cv-981<br><br>**COMPLAINT OF ACRISURE OF CALIFORNIA, LLC;**<br><br>(1) **BREACH OF CONTRACT;**<br><br>(2) **BREACH OF FIDUCIARY DUTY;**<br><br>(3) **MISAPPROPRIATION OF TRADE SECRETS;**<br><br>(4) **DEFEND TRADE SECRETS ACT;**<br><br>(5) **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;**<br><br>(6) **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br><br>(7) **VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200; and**<br><br>(8) **MONEY HAD AND RECEIVED.**<br><br>Trial Date:   None Set |

4831-2029-8135.1

COMPLAINT OF ACRISURE OF CALIFORNIA, LLC FOR DAMAGES AND INJUNCTIVE RELIEF
8:19-cv-981

Plaintiff ACRISURE OF CALIFORNIA, LLC (hereinafter "Plaintiff") files this Complaint against Defendants TLONDON INSURANCE SERVICES, LLC and TRICIA LONDON), and demanding a trial by jury alleges as follows:

## PARTIES

1. Plaintiff is a limited liability company duly organized under the laws of the State of Michigan, with its principal place of business at 5664 Prairie Creek Drive, Caledonia, Michigan 49316. Plaintiff is doing business and is authorized to do business in the State of California including, among others, the counties of Orange and Los Angeles. Plaintiff is a licensed insurance agency engaged in the business of selling insurance, professional employer organization ("PEO"), and other insurance services including, but not limited to, commercial property insurance, workers' compensation insurance, employee benefit insurance, life insurance and personal insurance.

2. Plaintiff is informed and believes, and thereupon alleges, that at all times relevant to this Complaint, Defendant TRICIA LONDON ("London") was, and continues to be, an individual and a resident of the County of Orange, State of California.

3. Plaintiff is informed and believes, and thereupon alleges, that at all times relevant to this Complaint, Defendant TLondon Insurance Services, LLC ("TLI") was incorporated in California as of December 13, 2017 by London (collectively, "Defendants") with its primary operation and place of business at 5030 Katella Avenue, Suite 210, Los Alamitos, CA 90720, just two blocks from Plaintiff's office in Los Alamitos. Plaintiff is informed and believes, and thereupon alleges, that TLI is a single member limited liability company with London as the single member.

4. Plaintiff is unaware of the true names and capacity of Defendants sued herein as Does 1 through 20, inclusive, and therefore sues such Defendants by such fictitious names. Plaintiff will pray for leave of this Court to amend this Complaint to allege the true names and capacities of the Defendants sued as Does 1 through 20, inclusive when such names and capacities are ascertained.

/ / /

5. Plaintiff is further informed and believes that at all times herein mentioned each of the Defendants were the co-conspirator, agent, representative, partner, and joint venture of each other, and was acting on behalf of the such conspiracy, partnership, and joint venture, and within the course and scope of said agency, in performing the acts set forth in this Complaint.  In addition, Defendants and each of their acts as hereinafter referred to, were engaged in, with the full authorization and ratification of each other, and each of them, and were within the course and scope of such agency, representation and conspiracy.

6. Plaintiff is informed and believes, and thereupon alleges, that each of the Defendants named herein is responsible in some manner for the occurrences herein described and that Plaintiff's injuries were proximately caused by said Defendants. Whenever it is alleged herein that any act or omission was done or committed by specifically named Defendant or Defendants generally, Plaintiff intends to allege that the same act or omission was also committed by each and every Defendant named herein including the Doe Defendants, both separately or in concert, or conspiring with the other Defendants.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C § 1331.  The Court would additionally have subject matter jurisdiction pursuant to 28 U.S.C § 1332(a)(1)  in that Plaintiff is a limited liability company that is a citizen of the State of Michigan and Defendant corporation and the individual defendants are citizens of and/or reside in the State of California and the amount in controversy is in excess of the jurisdictional limit of this Court.

8. The Court has personal jurisdiction over Defendants as they reside in and transact business in this judicial district and Plaintiff's causes of action arise from transactions within this judicial district.

9. Venue in this district is proper pursuant to 28 U.S.C. §1391(b)(1) and (c) and alternatively because a substantial part of the events giving rise to Plaintiff's claims arose

in this district making venue appropriate under 28 U.S.C. §1391 (b)(2).

## GENERAL ALLEGATIONS

10. London was employed as a Producer with Alandale Insurance Agency ("Alandale"), which has its principal place of business at 11022 Winner's Circle, Suite 100, Los Alamitos, California 90720.

11. As a condition of her employment, London agreed to abide to terms and policies set forth by Alandale's handbooks and signed an employment agreement on June 3, 2015 (the "Alandale Agreement"). The executed Alandale Agreement is attached hereto as Exhibit A and incorporated herein by reference.

12. London owed a duty of loyalty to Alandale. London was prohibited from representing any other insurance agencies during her employment, all prospects for the purchase of insurance were to be referred to Alandale, and any applications secured were to be written solely in Alandale's name.

13. London was required to disclose any actual or potential conflict of interest between London and a competitor, supplier, distributor, or contractor to Alandale. During the entirety of her employment, London made no such disclosure.

14. As a condition to her employment, London was required to protect the confidentiality of Alandale's trade secrets, proprietary information, and confidential company-related commercially-sensitive information (i.e. financial or sales records/reports, marketing or business strategies/plans, product development, customer lists, etc.)

15. In Fall of 2015, Plaintiff acquired Alandale. Pursuant to the acquisition, Plaintiff acquired the assets of Alandale.

16. Upon the acquisition of Alandale, London agreed to abide to terms and policies set forth in the handbooks and signed an employment agreement with Plaintiff as a producer (the "Acrisure Agreement"). The Acrisure Agreement executed on September 1, 2015 is attached hereto as Exhibit B and incorporated herein by reference.

17. London owed a duty of loyalty to Plaintiff. Pursuant to the Acrisure

Agreement, Plaintiff agreed that she would not place any business, directly or indirectly, with any person or entity other than Plaintiff without Plaintiff's prior written consent, nor be involved financially or otherwise with any active insurance agency or other business of a type conducted by Plaintiff, or similar enterprise.

18. London also agreed she would devote her full time and effort to securing business for Plaintiff's benefit while in the Plaintiff's employ.

19. As a condition to her employment, London agreed to protect the confidentiality of Plaintiff's trade secrets, proprietary information, and confidential company-related commercially-sensitive information (i.e. financial or sales records/reports, marketing or business strategies/plans, product development, customer lists, customer needs and purchase habits, etc.) by not directly or indirectly disclosing, furnishing or make available, except in the course of performing her duties of employment, any of Plaintiff's confidential information without Plaintiff's prior written approval.

20. Plaintiff owns certain confidential information, including but not limited to trade secrets, which possess independent economic value by virtue of not being known by the general public or others in the industry. Such confidential information includes, but its not limited to, information about Plaintiff's operations, process, procedures, trade secrets, agent lists, adjuster lists, rating techniques, rates, coverage, accounting rules, employee information, insurance companies, computer techniques, marketing techniques, advertising techniques, know-how, finances, business plans, costs, pricing, sales, customer lists, the needs, demands, preferences and purchase habits of customers, and vendor lists, including lists and contacts lists.

21. Plaintiff has taken measures to ensure that its confidential information, including but not limited to trade secrets, is not disseminated to others who would obtain an unfair competitive advantage if the information was disclosed. Plaintiff limits access to certain documents/information to only key employees, requires employees to execute agreements to protect and preserve Plaintiff's trade secrets, requires terminated employees to return all company property and to be removed from the company's systems,

implements computer access limitations and maintains an acceptable use policy relating to computer, internet, and email usage.

22. London had access to Plaintiff's confidential information including databases including compilations of customer lists, their needs, demands, purchasing preferences, renewal dates, negotiated rates and other confidential information.

23. London agreed she would not, directly or indirectly, disclose, furnish, or make available, except in the course of performing her duties of employment, any of Plaintiff's confidential information without Plaintiff's prior written approval.

24. Despite their explicit agreement, and while employed by Plaintiff, London engaged in activities and conduct that conflicted with Plaintiff's interests. Specifically, London formed a competing insurance agency, TLI, on or before December 13, 2017, headquartered in just blocks away from Plaintiff's Los Alamitos office.

25. On or before March 15, 2018, while employed by Plaintiff, London began accepting appointments and registered TLI as an agency authorized to transact on behalf of the carriers with whom she had appointments for many years through Alandale and Plaintiff.

26. Upon registering TLI, and while employed by Plaintiff, London began diverting Plaintiff's customers' business to TLI.

27. While employed by Plaintiff, London utilized Plaintiff's confidential information, including but not limited to its trade secrets, to divert Plaintiff's customers' business to TLI.

28. Upon information and belief, London continued to divert business to TLI during the rest of her employment with Plaintiff.

29. Upon termination on September 24, 2018, Plaintiff reiterated and emphasized London's continuing legal obligations to Plaintiff, including her obligation not to use or disclose Plaintiff's confidential information to wrongfully compete. London assured Plaintiff that she would not violate her legal obligations and that she would not solicit any of Plaintiff's clients. Plaintiff reasonably relied on London's representations.

Plaintiff has only begun to understand the full scope of London's illegal activity.

30. Upon information and belief, Defendants wrongfully acquired, disclosed and used Plaintiff's confidential information, including but not limited to its trade secrets, and diverted Plaintiff's clients to TLI since London's termination.

31. After her termination, Plaintiff repeatedly reminded London of her continuing legal obligations such that any continued breach by Plaintiff of her obligations constitutes willful and malicious conduct.

32. During her employment, London requested to make draws against her anticipated commissions and expressly agreed to reimburse any amount by which her draws exceeded her earned commissions.

33. By April 2017, London's draws began to exceed her earned commissions. Accordingly, Plaintiff decreased the permissible draw amount in order to try to bring London current.

34. When she was terminated, London owed Plaintiff $37,210.99 for draws wherein she exceeded her earned commissions. Currently, London owes Plaintiff $37,210.99 for these draws.

35. As a result of the foregoing conduct, Plaintiff has been damaged in the amount to be proven at trial but in excess of the jurisdiction of this Court. If Defendants continue such conduct, Plaintiff's damages will continue to increase.

## FIRST CAUSE OF ACTION

### (Breach of Contract against London)

36. Plaintiff re-alleges and incorporates by this reference as though fully set forth herein each and every allegation in Paragraphs 1 through 35, above.

37. Plaintiff is informed and believes, and thereupon alleges, that London breached the Acrisure Agreement commencing in or about December 2017 by engaging in conduct that competed with Plaintiff, forming TLI, diverting business by accepting appointments and registering TLI as an agency authorized to transact on behalf of the carriers with whom she had appointments through Plaintiff, misappropriating Plaintiff's

confidential information – all in an effort to do business with Plaintiff's customers and wrongfully compete with Plaintiff in violation of London's legal obligations, and refusing to repay the overages of her draws.

38. By reason of London's breaches of her contracts, Plaintiff has been damaged and continues to suffer damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty Against London)

39. Plaintiff re-alleges and incorporates by this reference of fully set forth therein each and every allegation of Paragraphs 1 through 38, above.

40. As a producer, London owed a fiduciary duty of loyalty and care to Plaintiff. Plaintiff placed London in a positon of trust and confidence and London accepted such position and agreed to act in Plaintiff's best interests. Plaintiff in fact reposed trust and confidence in London to Plaintiff's detriment.

41. This duty of loyalty required London to act with utmost good faith in all dealings with Plaintiff as London owed Plaintiff her undivided loyalty.

42. In committing the above-described acts, London repeatedly and intentionally breached fiduciary duties owed to Plaintiff by knowingly acting against Plaintiff's interests.

43. In so doing, London was acting for her personal gain in furtherance of her own financial and competitive advantage and without Plaintiff's consent.

44. London benefited from the breach in fiduciary duty both financially and competitively.

45. Plaintiff has suffered damages proximately caused by London's actions alleged herein.

46. London's conduct described above was intentional, malicious and oppressive justifying an award of exemplary damages.

/ / /

/ / /

**THIRD CAUSE OF ACTION**

**(Violation of California Uniform Trade Secrets against All Defendants)**

47. Plaintiff re-alleges incorporates by this reference as though fully set forth herein each and every allegation of Paragraphs 1 through 46, above.

48. London was in possession of Plaintiff's trade secrets while employed by Plaintiff, as well as Alandale, including but not limited to, information about Plaintiff's operations, process, procedures, trade secrets, agent lists, adjuster lists, rating techniques, rates, coverage, accounting rules, employee information, insurance companies, computer techniques, marketing techniques, advertising techniques, know-how, finances, business plans, costs, pricing, sales, customer lists, the needs, demands, preferences and purchase habits of customers, and vendor lists, including lists and contacts lists.

49. Plaintiff has taken reasonable measures designed to prevent the confidential information from being disclosed to, or used by, any person other than those persons selected by Plaintiff, who have been granted access to such information exclusive purposes of aiding Plaintiff in the performance of duties for Plaintiff.

50. Plaintiff invested time, capital and expertise in developing and compiling its trade secrets and other confidential, proprietary business information and in the developments of its business which is not information generally known to those in the industry.

51. This confidential, proprietary, and trade secret information derives independent value, both actual and potential, from not being generally known to other persons or businesses who could obtain economic value from its disclosure or use.

52. Plaintiff never authorized Defendants, or any other person or entity working in concert with Defendants, or under the direction of any of them, to retain, utilize, or divulge confidential information belonging to Plaintiff or to use such information for their own benefit or the benefit of anyone other than Plaintiff.

53. London agreed not to use or disclose Plaintiff's confidential information, including its trade secrets.

54. Plaintiff's confidential information constitutes legally protected trade secrets within the meaning of California Uniform Trade Secrets Act (*California Civil Code* §3426.1).

55. During and after her employment, London misappropriated Plaintiff's confidential information by removing it from Plaintiff's possession without Plaintiff's approval, exploiting such information in connection with TLI's business, and otherwise benefitting from the use of confidential information and disclosing it to and using it connection with TLI. As a result, TLI has wrongfully acquired and both TLI and London have used Plaintiff's confidential information and trade secrets.

56. Plaintiff is informed and believes and thereupon alleges, that Defendants continue to misappropriate the confidential information by means alleged in this Complaint and by other means presently unknown to Plaintiff and will continue to do so unless restrained by this Court.

57. By their acts and omissions, Defendants have engaged in misappropriation of the trade secrets in violation of the California Uniform Trade Secrets Act.

58. As a direct approximate result of the misappropriation of Plaintiff's confidential information, Plaintiff has been damaged, and Defendants will wrongfully benefit in an amount according to proof.

59. In misappropriating the confidential information as alleged herein, Defendants acted willfully and maliciously, with knowledge that their conduct violated Plaintiff's legal rights, for the purpose of usurping the value of the confidential information and enriching themselves with profits diverted from Plaintiff's business. Pursuant to the Uniform Trade Secrets Act, Plaintiff should be awarded punitive damages in the amount equal to twice its actual damages according to proof as well as all attorneys' fees incurred in pursuing this action, due to Defendants' willful and malicious conduct described above.

60. Pursuant to the Uniform Trade Secrets Act, Plaintiff is entitled to injunctive relief to restrain the continued actual and threating misappropriation of Plaintiff's trade secrets.

## FOURTH CAUSE OF ACTION

### (Defend Trade Secrets Act Against All Defendants)

61. Plaintiff re-alleges and incorporates by this reference of fully set forth therein each and every allegation of Paragraphs 1 through 60, above.

62. Plaintiff owns and possesses certain confidential, proprietary and trade secret information including, but not limited to, customer contracts and pricing data, management protocols, strategic plans, customer needs, preferences, demands and purchase habits as well as and customer lists and other information as described above.

63. This confidential, proprietary, and trade secret information relates to services rendered and used, sold, or intended to be used and sold in interstate commerce.

64. Plaintiff has taken reasonable measures to keep such information secret and confidential by, among other things, limiting access to its trade secret information, and requiring key employees, including London, to separately sign agreements relating to such information.

65. This confidential, proprietary, and trade secret information derives independent value, both actual and potential, from not being generally known to other persons or businesses who could obtain economic value from its disclosure or use.

66. During and after her employment, London misappropriated Plaintiff's confidential information by removing it from Plaintiff's possession without Plaintiff's approval, exploiting such information in connection with TLI's business, and otherwise benefitting from the use of confidential information and disclosing it to and using it connection with TLI. Therefore TLI has also wrongfully acquired and used Plaintiff's trade secrets.

67. Defendants misappropriated Plaintiff's trade secret information in the improper and unlawful manner as alleged herein. During London's employment and subsequently, Defendants misappropriated the trade secret information using it to set up a new business, TLI, in direct competition with Plaintiff. TLI's very existence is owed to that trade secret information, as it is only able to compete in the marketplace, with little to

no lead time, because of the theft of information by Defendants.

68. On information and belief, Defendants use of Plaintiff's trade secret information is ongoing.

69. As a direct and proximate result of Defendants' conduct as alleged herein, Plaintiff has suffered damages in an amount to be proven at trial.

70. Defendants' misappropriation of Plaintiff's trade secret information was willful and malicious, further entitling Plaintiff to recover exemplary damages and its attorneys' fees and costs.

71. On information and belief, if Defendants' conduct is not restrained, and if Defendants are not enjoined, Defendants will continue to misappropriate, disclose, and use for their own benefit and to Plaintiff's detriment Plaintiff's trade secret information.

72. Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests. Injunctive relief, pursuant to 18 USC §1836(b)(3)(A)(i) is necessary to eliminate the commercial advantage that otherwise would be derived from Defendants' continued misappropriation of Plaintiff's trade secret information.

73. Plaintiff requests that the Court take affirmative action to protect its trade secrets, pursuant to 18 USC §1836(b)(3)(A)(ii), including by ordering the inspection of Defendants' computers, personal USB and other data storage devices, email accounts, cloud-based storage accounts to determine the extent to which Plaintiff's trade secrets were wrongfully acquired, disclosed and used.

### FIFTH CAUSE OF ACTION

**(Intentional Interference with Contractual Relations Against All Defendants)**

74. Plaintiff re-alleges and incorporates by this reference of fully set forth therein each and every allegation of Paragraphs 1 through 73, above.

75. Plaintiff had enforceable contracts with customers who obtained insurance through Plaintiff for which Plaintiff received revenues for the binding of such insurance.

Defendants were aware of Plaintiff's contracts.

76. Plaintiff is informed and believes, and thereupon alleges, that Defendants have encouraged and solicited customers of Plaintiff to place their insurance requests through TLI, and did so while London was still employed by Plaintiff.

77. As result of the actions alleged herein, Plaintiff has lost customers and substantial business a result of Defendants' interference. Defendants have been unjustly enriched as a result of their wrongful interference.

78. Plaintiff is informed and believes, and thereupon alleges, that in doing the acts herein above, Defendants acted with oppression, fraud and/or malice entitling Plaintiff to recover punitive damages in amount appropriate to punish Defendants and deterred them from engaging in similar conduct again.

79. Plaintiff is informed and believes, and thereupon alleges, that unless restrained, Defendants will continue in the acts and conduct set forth above, to Plaintiff's great and irreparable injury for which damages will not afford adequate relief.

## SIXTH CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Advantage Against All Defendants)**

80. Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation of Paragraphs 1 through 79, above.

81. Plaintiff had a prospective economic relationship with customers that had placed insurance through Plaintiff and Plaintiff expected and had reason to believe that these business relationships and customers would continue for the foreseeable future.

82. By virtue of the acts alleged above, Defendants knowingly, intentionally, wrongfully, interfered with Plaintiff's prospective economic relationship with its customers.

83. As a direct and proximate result of the Defendants' interference with Plaintiff's prospective relationship with its customers, Plaintiff has been damaged and Defendants will wrongfully benefit in an amount to be proven at trial but in excess of the

jurisdictional limits of this Court.

84. Plaintiff is further informed and believes, and thereupon alleges, that unless Defendants are enjoined and restrained by this Court to continuing to interfere with Plaintiff's prospective economic relationships, Defendants will continue to interfere with Plaintiff's prospective economic relationships to the determent of Plaintiff.

85. In engaging in the above-referenced conduct, Defendants acted with fraud, oppression, or malice and they intended to steal business from Plaintiff by interfering with Plaintiff's ongoing prospective business relationships.

86. Plaintiff is entitled to award of punitive damages in an amount according to proof sufficient to punish Defendants and deter their misconduct.

## SEVENTH CAUSE OF ACTION

**(Violation of California Business & Professions Code §17200 Against All Defendants)**

87. Plaintiff re-alleges and incorporates by this reference as though fully set forth herein each and every allegation in Paragraphs 1 through 86, above.

88. Defendants have engaged in unfair competition against Plaintiff as alleged above and have caused and continue to cause damage and injury to Plaintiff.

89. Defendants' conduct, as alleged herein, constitutes unfair business practices and unfair competition within the meaning of Business and Professions Code sections 17200 *et seq.*

90. Further, Plaintiff is informed and believes, and thereupon alleges, that Defendants have earned profits as result of such acts of unfair competition, the exact amount of which is presently not known to Plaintiff.

91. Plaintiff is informed and believes, and thereupon alleges, that Defendants performed the above-mentioned acts for purposes of injuring Plaintiff.

92. Plaintiff is further informed and believes, and thereupon alleges, that Defendants have unjustly benefitted by these acts of unfair competition.

93. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages in form of lost profits, in an amount not yet fully ascertained, for

which Defendants owe Plaintiff restitution.

94. As a direct and approximate result of the Defendants' actions described herein , Plaintiff is entitled injunctive relief as permitted by Business & Professions Code section 17203 and as well as restitution of wrongful profits in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### (Money Had and Received Against London)

95. Plaintiff re-alleges and incorporates by this reference as though fully set forth herein each and every allegation in Paragraphs 1 through 94, above.

96. London took draws against her anticipated commission and expressly agreed to reimburse Plaintiff any monies in excess of actual commission earned.

97. At the time of London's termination, London owed Plaintiff $37,210.99 in draws wherein she exceeded her earned commission.

98. To date, London owes $ 37,210.99 for these unpaid draws.

99. Although requested to do so, London has neglected, failed and refused to pay Plaintiff the amounts owing. London is indebted to Plaintiff for this amount for money had and received by London which belongs to Plaintiff.

100. As a direct and proximate result of London's wrongful failure to pay Plaintiff, Plaintiff has suffered and will suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an award of relief against Defendants, and each of them, as follows:

1. For actual damages according to proof;

2. For an award of punitive damages in the amount to be proven at trial;

3. For restitution/disgorgement of funds obtained as a result of Defendants' unlawful and unfair business practice and misappropriation in the amounts Defendants have been unjustly enriched;

4. For a permanent injunction ordering Defendants to:

   (a)  return the confidential information they misappropriated from Plaintiff; and

   (b)  refrain from directly or indirectly using, disclosing, or otherwise exploiting Plaintiff's confidential information for any purposes including, but not limiting to, identifying, soliciting, or communicating with customers, prospects or business partners;

5. For reasonable attorneys' fees and costs incurred herein;

6. For all interest recoverable by law, including prejudgment interest; and

7. For such other relief as the Court deemed just and proper.

DATED: May 22, 2019   LEWIS BRISBOIS BISGAARD & SMITH LLP


By: /S/ Jessica Stuart Pliner
   Jessica S. Pliner
   Sumy Kim
   Attorneys for Attorneys for Plaintiff
   ACRISURE OF CALIFORNIA, LLC

# DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 38-1 of the Central District of California, Plaintiff Acrisure of California LLC hereby requests trial by jury for all claims so triable.

DATED: May 22, 2019                LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /S/ Jessica Stuart Pliner
Jessica S. Pliner
Sumy Kim
Attorneys for Attorneys for Plaintiff
ACRISURE OF CALIFORNIA, LLC

